DECISION.
Defendant-appellant, Darryl Sheppard, was charged with one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of aggravated robbery in violation of R.C. 2911.01(B) with a firearm specification. Following a jury trial, Sheppard was convicted on all three counts. The trial court imposed a ten-year sentence for each felonious assault, to be served concurrently, and a ten-year sentence for the aggravated robbery, to be served consecutively with the other sentences. On appeal, Sheppard raises seven assignments of error, none of which we find to be well taken.
I. FACTS
Cincinnati police officer Kathy Newsom was working on routine patrol on March 12, 2000, when she found Sheppard asleep on the skywalk near the top of an escalator at 524 Race Street. Officer Newsom testified at trial that when she found Sheppard, she radioed police headquarters to report her location and a man sleeping on the skywalk. After Newsom radioed in, she testified, Sheppard woke up, stood with his hands in his pockets, and stared at her.
After asking Sheppard to remove his hands from his pockets several times, Officer Newsom pulled a can of Mace from her service belt. At that time, Sheppard removed his hands from his pockets, and Officer Newsom returned the Mace to her belt. Sheppard then began moving towards Officer Newsom, who told him to stay where he was. When Sheppard continued to advance, Officer Newsom put out her hands and told Sheppard to stop. Officer Newsom then radioed for another police car in the area and asked Sheppard for identification.
At that point, Officer Newsom testified, Sheppard put his left hand behind his back as if reaching for something and simultaneously hit her with his right fist across the side of her face. Sheppard then began pummeling her with a continuous stream of punches to her face and head, which she tried to ward off with her hands. At some point, Sheppard knocked her to the ground. He straddled her and continued to punch her with such force that Officer Newsom thought she would lose consciousness. During the assault, Sheppard told Newsom that he was going to kill her. He then grabbed for her gun and tried to pull it out of its holster. They struggled over the gun, which Officer Newsom was able to keep in her holster. During the struggle, Officer Newsom yelled at Sheppard to stop. She testified that he told her he was going to take the gun and kill her.
Officer Newsom was able to disengage the magazine from her gun and slide it across the skywalk. She then told Sheppard that she had radioed for help and that other police officers would be arriving. Newsom testified that just as she was beginning to lose consciousness, Sheppard jumped off of her and ran down the escalator, away from the skywalk. She then stood up and saw a knife underneath where they had struggled. Officer Newsom reloaded her gun with another magazine and radioed for help. She then ran after Sheppard.
Sheppard was later apprehended by other police officers and brought to Newsom's location for identification. After identifying Sheppard as her assailant, Newsom was treated at University Hospital for a concussion. At trial, the state introduced pictures of Newsom detailing welts on her face and head, as well as blood spots in her eyes. Newsom also testified that she had cuts on the inside of her mouth, knots on her head, and a laceration on her right index finger, and that, as a result of her injuries, she missed four days of work.
Although Sheppard did not testify at trial, the state played a taped statement that Sheppard had voluntarily given to police after he was given his Miranda rights. In the statement, Sheppard admitted to sleeping on the skywalk and being involved in a confrontation with Officer Newsom, but otherwise described a different sequence of events. Sheppard stated that a female police officer wearing a uniform and a badge woke him up and asked him in a harsh voice for his name and some identification. When he moved toward the officer to show her his identification, she told him to stop. The police officer then walked up to him, pushed him against the wall with "tremendous force," and then reached for her gun.
Sheppard stated that he was afraid of being shot, so he grabbed the officer by the arms, they struggled, and he laid her on the ground. Once on the ground, he straddled the officer's body. He put his hands on her arms and his left knee over her gun. He told the officer that he was tired of being bothered by people. When the officer reached for her gun, he put his hand over her hand on the gun. After she pulled the clip out of her gun and slid it across the walkway, he got up and ran down the escalator. He hid in a walkway in an alley.
Sheppard stated that when he was brought to Officer Newsom for identification, he apologized to her. He further stated that he often carried a kitchen knife in his pocket for protection because he had been robbed before. He denied having the knife on him that evening. He also denied hitting Officer Newsom. He stated that she might have "raised up" and bumped into his fist when they were struggling on the ground, but that he did not hit her.
II. ANALYSIS
In his first assignment of error, Sheppard argues that the trial court erred by failing to grant his motion to suppress the statement he had made immediately after his arrest. Sheppard claims that he was subjected to custodial interrogation without the benefit of Miranda warnings when Officer Newsom hinted that she wanted an apology. The trial court found that both Officer Newsom's statement and Sheppard's response were spontaneous. It further found that Officer Newsom did not intend to elicit any type of incriminating response or confession from Sheppard. We agree with the trial court.
Miranda v. Arizona[1] mandates that all individuals who are taken into police custody must be advised of certain constitutional rights. Those rights can be waived prior to interrogation, provided the waiver is voluntary, intelligent, and knowing.[2] The duty to advise a suspect of his Miranda rights does not arise until there is a "custodial interrogation."[3]
Custodial interrogation in the context of Miranda rights "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject."[4] In determining whether a suspect has been "interrogated," the court should focus on whether the suspect has been compelled to speak because of police coercion.[5]
At the suppression hearing, Officer Michael Bell testified that, after he handcuffed Sheppard, he placed him in the rear passenger seat of his police cruiser and transported him to Officer Newsom's location for identification. Upon arriving, Officer Newsom exited from her police cruiser and positively identified Sheppard. Officer Newsom then turned and started walking away. While walking away, she said under her breath, "Aren't you at least going to apologize?" Sheppard then responded by saying, "I'm sorry."
At trial, Officer Newsom testified that "at one point I told someone else. I said because Darryl Sheppard just kept looking at me, I said, he didn't even say anything. Didn't say anything. And he said he apologized." Although Sheppard did not testify at trial, the jury listened to a taped statement in which he voluntarily stated that Officer Newsom had asked him for an apology, and he had said, "Yeah, I apologize."
The testimony presented at the suppression hearing and at trial supports the trial court's finding that Sheppard was not subjected to custodial interrogation, and his statement was, therefore, admissible despite the lack of Miranda warnings. The record shows that Officer Newsom made a spontaneous "offhand remark" as she turned to walk away from Sheppard. Given the fact that she muttered the comment under her breath as she was turning away from Sheppard, she reasonably could not have anticipated that those words would have been likely to evoke an incriminating response from him. Additionally, the record reveals that, after he was given his Miranda rights, Sheppard voluntarily admitted to police that he had apologized to Officer Newsom. Because we hold that Sheppard's initial statement was not the product of interrogation, it was not subject to suppression. As a result, we overrule his first assignment of error.
In his second assignment of error, Sheppard claims that the trial court should have instructed the jury on aggravated assault and assault, lesser-included offenses of felonious assault. The trial court refused to instruct the jury on either offense because the evidence presented did not warrant the lesser charges. Again, we agree with the trial court.
A trial court has broad discretion in deciding how to fashion jury instructions.[6] In determining whether to instruct the jury on a lesser-included offense, the trial court must first decide whether the offense on which the instruction is requested is a lesser-included offense. Then it must assess whether the evidence supports an instruction on the lesser-included offense. If the trial court determines that it is possible under any reasonable view of the evidence for the jury to find the defendant not guilty of the greater offense and guilty of the lesser offense, then it must instruct the jury on the lesser-included offense.[7]
Sheppard argues that the trial court should have instructed the jury on aggravated assault because Officer Newsom provoked his attack. We disagree. Aggravated assault is not a lesser-included offense of felonious assault, but an offense of inferior degree.[8] Aggravated assault is the same offense as felonious assault with a reduction in penalty upon a determination by the trier of fact of the existence of the mitigating circumstances of sudden passion or sudden fit of rage, which lessen the defendant's culpability.[9] If a defendant who is charged with felonious assault presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault.[10]
In this case, the only evidence of serious provocation by Officer Newsom was Sheppard's taped statement in which he stated that Officer Newsom had talked to him in a gruff voice, pushed him up against a wall, and reached for her gun. Sheppard further stated that he was scared that Officer Newsom was going to shoot him, so he laid her on the ground. These statements alone did not support a finding that Sheppard was provoked or under the influence of sudden passion or a sudden fit of rage to warrant an instruction on aggravated assault. Accordingly, the trial court properly declined to instruct the jury on aggravated assault.
The trial court's refusal to instruct the jury on the lesser-included offense of assault was also proper. Unlike aggravated assault, assault is a lesser-included offense of felonious assault.[11] The critical distinction between assault, as defined by R.C. 2903.13(A), and felonious assault, as defined by R.C. 2903.11(A)(1), relates to the amount of harm caused. Felonious assault prohibits a defendant from causing serious physical harm, while assault only requires evidence of some physical harm. Thus, the critical issue in this case is whether the evidence supported a finding only of serious physical harm to Officer Newsom.
At trial, Officer Newsom testified that she was treated at University Hospital for a concussion. The state introduced photographs of Newsom detailing welts on her face and head, as well as blood spots in her eyes. Newsom also testified that she had cuts on the inside of her mouth, knots on her head, and a laceration on her right index finger, and that, as a result of her injuries, she missed four days of work.
Newsom's testimony, combined with the photographs of her injuries, leads us to conclude that Sheppard was not entitled to a jury instruction on the offense of assault. The record contains substantial, credible evidence of serious physical harm to Officer Newsom from which the trier of fact could not possibly have found Sheppard not guilty of felonious assault, but guilty of the lesser-included offense of assault. Accordingly, we overrule Sheppard's second assignment of error.
In his third assignment of error, Sheppard claims that the trial court abused its discretion when it admitted a knife and a photograph of the knife into evidence. We disagree.
A trial court has broad discretion in deciding whether evidence is relevant and admissible.[12] Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[13] Relevant evidence is admissible, except where the probative value of the evidence is substantially outweighed by its prejudicial effect.[14] A trial court's admission of irrelevant or prejudicial evidence is an abuse of its discretion.[15]
In this case, the trial court did not abuse its discretion when it admitted the knife and the photograph of the knife into evidence. Our review of the record indicates that the trial
court carefully reviewed this evidence and determined that the knife and the photograph of the knife were relevant and probative, and were also illustrative of Officer Newsom's testimony. Officer Newsom testified that when she stood up she found a knife underneath where she had struggled with Sheppard. Another police officer testified that he had found the knife on the skywalk underneath the area where Sheppard and Officer Newsom had struggled. Furthermore, Sheppard, in his statement to police, admitted that he had often carried a kitchen knife with him for protection. Given this testimony, we cannot say that the trial court abused its discretion in admitting the knife and a photograph of the knife into evidence. As a result, we overrule Sheppard's third assignment of error.
In his fourth assignment of error, Sheppard argues that his convictions for felonious assault under both R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2) involved allied offenses of similar import under R.C. 2941.25(A), and that the trial court erred by not merging the offenses for sentencing purposes. In his fifth assignment of error, Sheppard alleges that he was denied effective assistance of trial counsel. More specifically, he argues that his trial counsel's performance fell below the constitutionally required standard, because counsel did not object when the trial court entered convictions on both felonious-assault charges. We disagree.
Felonious assault under R.C. 2903.11(A)(1) and felonious assault under R.C. 2903.11(A)(2) are not allied offenses of similar import.[16] InState v. Coach,[17] this court compared the elements of the separate versions of felonious assault under R.C. 2903.11(A)(1) and R.C.2903.11(A)(2) and concluded that the commission of felonious
assault under subsection (A)(1) does not result in the commission of felonious assault under subsection (A)(2). As a result, the trial court did not err by failing to convict Sheppard for felonious assault only once. Thus, Sheppard's fourth assignment of error is overruled.
We also reject Sheppard's claim that his trial counsel was ineffective because he failed to argue that the felonious-assault convictions involved allied offenses of similar import. To establish ineffective assistance of counsel, Sheppard must show that his counsel's performance fell below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance.[18]
On June 30, 2000, the trial court sentenced Sheppard to ten years in prison for his felonious-assault conviction under R.C. 2903.11(A)(1) and to a concurrent term of ten years in prison for his felonious-assault conviction under R.C. 2903.11(A)(2). Our review of the record indicates that, prior to sentencing, Sheppard's counsel told the court that the felonious assault convictions should merge. Then the trial court, attempting to treat the felonious-assault convictions as if they involved allied offenses, imposed concurrent prison terms. Given the facts that Sheppard's attorney argued to the court that his felonious-assault convictions should merge and that Sheppard was sentenced after our decision in State v. Coach, we cannot say that he was provided ineffective assistance of counsel. We, therefore, overrule his fifth assignment of error.
In his sixth and seventh assignments of error, Sheppard challenges his convictions for felonious assault and aggravated robbery on both the sufficiency and the weight of the evidence. In his seventh assignment of error, he claims that the state did not present sufficient evidence of serious physical harm to Officer Newsom, because no photographs or other evidence was admitted at trial to show injuries to her arms or hands. In his sixth assignment of error, he claims that his convictions for felonious assault under R.C. 2903.11(A)(2) and aggravated robbery under R.C. 2911.01(B) were not supported by the evidence, because no fingerprints were found on Officer Newsom's gun. We find neither assignment well taken.
A reviewing court will not reverse a jury verdict for insufficient evidence when, with the evidence viewed in a light most favorable to the state, there is substantial evidence upon which the jury could have concluded that all of the elements of the charged offenses had been proved beyond a reasonable doubt.[19]
Sheppard was charged with felonious assault under R.C. 2903.11(A)(1), felonious assault under R.C. 2903.11(A)(2), and aggravated robbery under R.C. 2911.01(B). A defendant violates R.C. 2903.11(A)(1) if he knowingly causes physical harm to another. A defendant violates R.C. 2903.11(A)(2) if he knowingly causes or attempts to cause physical harm to another by means of a deadly weapon. A defendant violates R.C. 2911.01(B) if he knowingly removes or attempts to remove a deadly weapon from a law enforcement officer, or if he knowingly deprives or attempts to deprive a law enforcement officer of a deadly weapon when (1) the law enforcement officer is acting within the course and scope of the officer's duties and (2) the offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
In viewing the evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could have found that the state had sufficiently proved the elements of felonious assault and aggravated robbery beyond a reasonable doubt. With respect to the felonious-assault charges, the state presented sufficient evidence through Officer Newsom's testimony, the photographs of her injuries, and the testimony of other police officers who saw her immediately after the attack, to establish the element of serious physical harm. The state also presented sufficient evidence that Sheppard had attempted to cause Officer Newsom serious physical harm by means of a deadly weapon. Officer Newsom testified about Sheppard's repeated attempts to remove her gun from her holster. Thus there was legally sufficient evidence to sustain a verdict against Sheppard for both felonious-assault charges.
As for the aggravated-robbery charge, there was sufficient testimony from Officer Newsom that Sheppard had knowingly attempted to remove a deadly weapon from her. There was also sufficient evidence that Sheppard knew or had reasonable cause to know that Newsom was a law enforcement officer. Sheppard acknowledged in his taped statement that Officer Newsom was wearing a uniform and a badge that evening. Officer Newsom also testified that she was on duty when Sheppard assaulted her. As a result, we hold that, with the evidence construed most strongly in favor of the prosecution, there was a legally sufficient basis to sustain a verdict against Sheppard for aggravated robbery. Accordingly, we overrule Sheppard's seventh assignment of error.
To reverse a conviction on the manifest weight of the evidence, a reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice.[20] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[21]
Having reviewed the record, we reject Sheppard's contention that his convictions were against the weight of the evidence. A jury is free to believe all, part, or none of any witness's testimony.[22] Here the jury chose to believe Officer Newsom's testimony instead of Sheppard's taped statement. Thus, after reviewing the entire record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Sheppard's convictions and order a new trial. Accordingly, we overrule Sheppard's sixth assignment of error. We, therefore, affirm the judgment of the trial court.
Judgment affirmed.
Doan, P.J., concurs.
Painter, J., concurs in part and dissents in part.
[1] (1966) 384 U.S. 436, 86 S.Ct. 1602.
[2] See id. at 444, 86 S.Ct. at 1612.
[3] See State v. Tucker (1998), 81 Ohio St.3d 431, 435, 692 N.E.2d 171,175.
[4] Rhode Island v. Innis (1980), 446 U.S. 291, 308,100 S.Ct. 1682, 1689-1690.
[5] See State v. Tucker, supra, at 436, 692 N.E.2d at 175.
[6] See State v. Kidder (1987) 32 Ohio St.3d 279, 280, 513 N.E.2d 311,313.
[7] See State v. Davis (1983), 6 Ohio St.3d 91, 95, 451 N.E.2d 772,776.
[8] See State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph four of the syllabus.
[9] See id. at 210, 533 N.E.2d at 299-300.
[10] See State v. Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272,274-275.
[11] See State v. Daniels (1984), 14 Ohio App.3d 41, 469 N.E.2d 1338;State v. Thrasher (Jan. 21, 1994), Clark App. Nos. 2996 and 2997, unreported.
[12] See State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.
[13] See Evid.R. 401.
[14] See Evid.R. 403(A).
[15] See State v. Lowe (1994), 69 Ohio St.3d 527, 532, 634 N.E.2d 616,620; Crim.R. 52(A).
[16] See State v. Coach (May 5, 2000), Hamilton App. No. C-990349, unreported.
[17] See fn. 13, supra.
[18] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[19] See State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[20] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547, citing State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720.
[21] State v. Thompkins, supra, at 387, 678 N.E.2d at 546-547.
[22] See State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.